## NORTHERN PAC. RY. CO. v. SODERBERG.

(Circuit Court of Appeals, Ninth Circuit. October 1, 1900.)

No. 601

1. PUBLIC LANDS—MINERAL CHARACTER—BUILDING STONE.

Land chiefly valuable for granite which it contains, suitable for quarrying, and of good merchantable quality, is mineral land, within the meaning of the exception in the grant of July 2, 1864, to the Northern Pacific Railroad Company, and did not pass under said grant.

2. SAME—RAILROAD GRANT—EXCEPTION OF MINERAL LANDS.

The term "mineral lands," as used in excepting such lands from the grant of July 2, 1864, to the Northern Pacific Railroad Company, was subject to enlargement in its meaning at any time before the grant attached by the definite location of the road; and, conceding that, as used and understood by congress at the time of the grant, it did not include lands chiefly valuable for building stone they contained, subsequent acts of congress prior to 1879 fixed the status of such lands as mineral, and they were excluded from the grant along the portions of the road not definitely located until after that date.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

The Northern Pacific Railway Company appeals from a decree of the circuit court dismissing its bill in a suit brought to restrain J. A. Soderberg, the appellee, from removing granite from the N. E. ¼ of section 19, township 27 N., range 10 E. of the Willamette meridian, in the state of Washington. The bill alleges that the land in question is part of an odd-numbered section situated within the 40-mile or place limits of the grant to the Northern Pacific Railroad Company by act of congress approved July 2, 1864; that the title to said land passed to the railroad company upon the definite location of its line of road, which title the appellant has acquired by purchase; that there is situated upon said premises a ledge of granite of good quality, of the value of more than $5,000, and that the defendant is engaged in quarrying and removing the same. The defendant answered, alleging that the premises were excepted from the grant to the Northern Pacific Railroad Company by reason of the fact that they contained granite valuable for building purposes, and alleged further that the defendant had made an entry of the premises under the mineral laws of the United States. The answer set forth an affirmative defense in the nature of a cross bill, alleging the facts of the defendant's entry of the premises under the mineral laws of the United States, and praying that he be decreed to be the owner of the premises covered by his entry. The case was heard upon an agreed statement of facts, in which it was shown that the line of the railroad was definitely located opposite the premises in controversy on March 26, 1884, and that it was a portion of the main line over the Cascade Mountains, authorized by act of congress of July 2, 1864, which, under the joint resolution of May 31, 1870, was designated the "Branch Line"; that at the date of the grant and at the date of the location of the road opposite the premises in controversy the land was public land, to which the United States had full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights, unless the other facts stipulated and the acts of congress passed previous to March 26, 1884, constituted a reservation or appropriation; that the land in controversy is rough and mountainous land, and its principal value consists in the granite thereon, which is of good and merchantable quality, valuable for building stone, and of the value of more than $5,000; that on April 14, 1897, the defendant entered certain portions of said quarter section of land under the placer mining laws of the United States, and on April 26, 1897, he caused a record of the location of his claims to be filed and entered upon the public records of the mining district in which the

land is situated. The stipulation sets forth further facts sufficient to show that the appellee acquired title to said mining claims under the mineral laws of the United States, provided that said lands were subject to entry under such mining laws.

James B. Kerr, for appellant.

R. A. Ballinger, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The question presented in this case is whether land which is chiefly valuable for granite of a good, merchantable quality is mineral land within the meaning of the exception from the grant of lands to the Northern Pacific Railroad Company. Section 3 of the act of July 2, 1864, grants to the railroad company certain odd-numbered sections not mineral, "and whenever on the line thereof, the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption, or other claims or rights, at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the commissioner of the general land office." There is a proviso that "all mineral lands" are excluded from the operations of the act, and in lieu thereof a like quantity of unoccupied and unappropriated agricultural lands in odd-numbered sections nearest to the line of said road may be selected. There is a further proviso "that the word 'mineral,' when it occurs in this act, shall not be held to include iron or coal." Section 2 of the act confers upon the railroad company power and authority to take from the public lands adjacent to the line of said road materials of earth, stone, timber, etc., for the construction thereof. It is contended by the appellant that in all the congressional legislation relating to minerals and mineral lands prior to and including the grant to the Northern Pacific Railroad Company the terms "mineral" and "mineral land" were used in their proper and ordinary sense, and were intended to embrace only such substances as were obtained from mines. Reference is made to the ordinance of May 20, 1785, for the disposal of lands in the Western territory, in which there was reserved "one-third part of all gold, silver, lead, and copper mines, to be sold or otherwise disposed of, as congress shall hereafter direct," and to acts of congress in which lead mines and salines were reserved in the disposition of public lands, and especially to the act of September 4, 1841, the first general pre-emption law granting to settlers on public domain the right to purchase land to the extent of 160 acres each, in which it was provided in section 10 that no lands on which are situated any known salines or mines should be allowed entry under the provisions of the act. We do not, however, discover from the earlier statutes any definite light as to the meaning of the word "mineral" as the same is used in the grant to the Northern Pacific Railroad Company. In the pre-emption act of 1841 the reservation was of lands on which are situated any known "salines or mines." In the act of September 27, 1850, commonly known as the "Donation Act," the exception is of "mineral lands"

and lands reserved for salines. What is meant by the term "mineral lands" is not defined in the act, but the act contains provisions stating that portions of the public lands which seem unfit for cultivation purposes may be surveyed into townships only. Subsequently congress by statute repealed so much of the donation act as provided that none except township lines shall be surveyed where the lands are mineral, thus applying the term "mineral" to lands which seem unfit for cultivation. So the act of March 3, 1853, directing the survey of public lands in California, provided that "none other than township lines shall be surveyed where the lands are mineral." The act of July 1, 1864 (13 Stat. 343), enacted one day prior to the date of the grant to the Northern Pacific Railroad Company, has been regarded as a legislative interpretation of the words "mines" and "mineral lands" as they had been used by congress in prior legislation, and more especially in the pre-emption act of 1841. The act declared that "any tracts embracing coal beds or coal fields, constituting portions of the public domain, and which as 'mines' are excluded from the pre-emption act of 1841, and which under past legislation are not liable to ordinary private entry," might be offered at public sale. This legislation expresses the meaning of congress in reserving "mines" in the pre-emption act. It declares that mines of coal, which is not a metallic substance, and had not been specified in the reservations of gold, silver, copper, lead, etc., had been included in the word "mines" in the reservation of the pre-emption act. Mullan v. U. S., 118 U. S. 271, 6 Sup. Ct. 1041, 30 L. Ed. 170.

Contemporaneous construction of the word "mineral" by the executive officers whose duty it was to construe the land laws is, in a case of ambiguity, of persuasive force. U. S. v. Moore, 95 U. S. 760, 24 L. Ed. 588; Brown v. U. S., 113 U. S. 568, 5 Sup. Ct. 648, 28 L. Ed. 1079; Pennoyer v. McConnaughy, 140 U. S. 23, 11 Sup. Ct. 699, 35 L. Ed. 363; Barden v. Railroad Co., 154 U. S. 288, 14 Sup. Ct. 1030, 38 L. Ed. 992. In the case of In re Hooper, 1 Land Dec. Dep. Int. 560, the land department approved the rule which had been promulgated in a circular from the general land office that "whatever is recognized as a mineral by the standard authorities on the subject, where the same is found in quantity and quality to render the land sought to be patented more valuable on this account than for purposes of agriculture, should be treated as coming within the purview of the mining act of May 10, 1872." In Maxwell v. Brierly, 1 Brainard, Leg. Prec. 98, it was held that land more valuable for its deposits of stone, or whatever is recognized as mineral, than for agriculture, is mineral land. In the case of In re Bennet, 3 Land Dec. Dep. Int. 116, it was held that mountain land covered with granite cliffs and rocks, the value of which was in the quarry in the face of the cliff, was mineral land, and might be entered as a placer claim. This ruling was adhered to until 1891, when an apparent departure was made in the case of Conlin v. Kelly, 12 Land Dec. Dep. Int. 1, where it was held that stone useful only for general building purposes does not except land from pre-emption entry. In that case Kelly, the pre-emptioner, had made

final payment for the land seven years before Conlin filed his contest claiming that the land was valuable for mineral. Decision seems to have been controlled by that fact, together with the further fact, as found by the secretary, that the stone in the tract in controversy had no peculiar property or characteristic to give it special value otherwise than for general building purposes. But in McGlenn v. Wienbroeer, 15 Land Dec. Dep. Int. 370, it was held that land which contains a valuable deposit of stone useful for special purposes might be entered as a placer claim. The secretary distinguished the case of Conlin v. Kelly, and declared that the ruling in that case rested upon equitable as well as legal considerations, and that the department declined to cancel an entry which had existed for seven years upon the plea that it was fraudulently made, on the ground that common building rock, used for general purposes, is mineral. Shortly after the decision of the case of Conlin v. Kelly, and apparently for the purpose of disapproving the rule there announced, and of re-establishing the former ruling of the land department, congress enacted the law of August 4, 1892, permitting stone to be taken under the placer mining laws. In a case arising before the date of that law (South Dakota v. Vermont Stone Co., 16 Land Dec. Dep. Int. 263) it was held, following Conlin v. Kelly, that lands chiefly valuable for ordinary building stone are not excepted as mineral lands from the grant to the state for school purposes. But in Van Doren v. Plested, Id. 508, it was held that land containing a deposit of sandstone of a superior quality for building and ornamental purposes, valuable only as a stone quarry, may be entered as a placer claim under the general mining laws. This also was held of an entry made prior to the act of 1892. In the case of In re Gibson, 21 Land Dec. Dep. Int. 329, it was held that land embraced within a placer entry of a tract chiefly valuable for ordinary building stone, made in 1889, is excepted from the subsequent operation of the grant of school lands to the state. In that case the secretary declined to approve the ruling in the case of South Dakota v. Stone Co. In Pacific Coast Marble Co. v. Northern Pac. R. Co., 25 Land Dec. Dep. Int. 233, it was held that lands valuable only on account of the marble deposit contained therein did not pass to the Northern Pacific Railroad Company under its grant of July 2, 1864, but were subject to placer entry under the mining laws.

These rulings of the land department are, in the main, in harmony with the definition of the word "mineral" as the same is popularly and generally accepted. A mineral is defined by the Century Dictionary to be:

"Any constituent of the earth's crust; more specifically an inorganic body occurring in nature, homogeneous, and having a definite chemical composition which can be expressed by a chemical formula, and further having certain distinguishing physical characteristics."

Bainb. Mines (4th Ed.) p. 1, defining the term "mineral," says:

"The term may, however, in the most enlarged sense, be described as comprising all the substances which now form or which once formed a part of the solid body of the earth, both external and internal, and which are now destitute of or incapable of supporting animal or vegetable life. In this view

it would embrace as well the bare granites of the mountains as the deepest hidden diamonds and metallic ores."

· There is authority in the earlier English decisions for holding that minerals signify that which is obtained from mines, from underground workings, as distinguished from that which is quarried. Davvell v. Roper, 24 Law J. Ch. 779; Rex v. Sedgley, 2 Barn. & Adol. 65; Rex v. Brettell, 3 Barn. & Adol. 424. But the weight of English authority includes under the term "mineral" that which is quarried as well as that which is obtained from mines. In Railway Co. v. Checkley, L. R. 4 Eq. 19, Lord Romilly, M. R., held that stone was a mineral under a reservation of mines and minerals. He said:

"Stone is, in my opinion, clearly a mineral; and in fact everything except the merest surface, which is used for agricultural purposes. Anything beyond that which is useful for any purpose whatever, whether it is gravel, marble, fire clay, or the like, comes within the word 'mineral' when there is a reservation of the mines and minerals from a grant of land."

In Earl of Rosse v. Wainman, 14 Mees. & W. 859, Parke, B., said:

"Beds of stone, which may be dug by winning or quarrying, are, therefore, properly minerals."

Similar views are expressed in Midland Ry. Co. v. Haunchwood Brick & Tile Co., 20 Ch. Div. 552; Micklethwait v. Winter, 5 Eng. Law & Eq. 526; Hext v. Gill, 7 Ch. App. 699; Jamieson v. Railway Co., 6 Scot. L. R. 188; and Attorney General v. Granite Co., 35 Wkly. Rep. 617. In the case last cited it was held that the term "mineral" included granite.

In Pennsylvania the ruling in Earl of Rosse v. Wainman was followed in Griffin v. Fellows, *81 Pa. St. 114, where it was said:

"The term 'mineral' embraces everything not of the mere surface which is used for agricultural purposes. The granite of the mountain as well as metallic ores and fossils are comprehended within it."

In Hartwell v. Cammon, 10 N. J. Eq. 128, it was held that paint stone found in strata below the surface of the soil is included in the terms "mines" and "minerals." Under the authority of these decisions and definitions, we entertain no doubt that in the reservation of mineral lands from the grant to the Northern Pacific Railroad Company the granite quarry in controversy was included. But if, indeed, the reservation of mineral lands, as the term "mineral" was used and understood at the time of the grant to the Northern Pacific Railroad Company, was insufficient to exclude from the grant lands valuable principally for granite quarries, congress nevertheless retained the power to subsequently enlarge the reservation, and make it more comprehensive, at any time before rights were vested by the definite location of the road. The grant was a grant of lands that were not otherwise reserved or appropriated at the time of the definite location of the line of the road. Menotti v. Dillon, 167 U. S. 703, 17 Sup. Ct. 945, 42 L. Ed. 333; Railroad Co. v. Sanders, 1 C. C. A. 192, 202, 49 Fed. 129, 134. In the case last cited this court said:

"Although there was no statute providing for the sale or bestowal of mineral lands at the time of the grant to plaintiff, congress had the right to, and did afterwards, make such a law; and under it claims could be and were lawfully initiated prior to the definite fixing of the line of plaintiff's road. We think that the reservations in the plaintiff's grant were made in contemplation of future legislation as well as the then existing laws."

Soon after making the grant, congress enacted the first mining act. 14 Stat. 251. The first section provides:

"That the mineral lands of the public domain, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and occupation by all citizens of the United States," etc.

On May 10, 1872, it was enacted (17 Stat. 91):

"That all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase," etc.

On June 3, 1878, congress enacted a law providing for the sale of lands valuable chiefly for timber or stone. 20 Stat. 89. These statutes define the status of the mineral lands included within the territorial limits of the railroad grant at the time when the grant took effect, the date of the definite location of the road. The land in controversy was land valuable chiefly for stone, and as such was offered for sale. The decree of the circuit court is affirmed.